UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION
www.flmb.uscourts.gov

In re:

ISLAND ROOFING AND RESTORATION, LLC

Chapter 11, Subchapter V
Case No. 2:23-bk-01419-FMD

Debtor.

_____/

## DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN
## OF LIQUIDATION DATED FEBRUARY 20, 2024

Debtor, ISLAND ROOFING AND RESTORATION, LLC, by and through its undersigned counsel, proposes this Debtor's Chapter 11, Subchapter V Plan of Liquidation dated February 20, 2024 ("Plan"), pursuant to 11 U.S.C. §§ 1190 and 1191.

## BRIEF HISTORY AND BACKGROUND

A.      Description of the Debtor's Business:

On November 22, 2023 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), Subchapter V, Small Business Debtor Case.

The Debtor is a Florida limited liability company established in 2021. The Debtor is certified and licensed by the State of Florida. The Debtor was a roofing contractor for residential and commercial properties. On January 25, 2024, the Debtor ceased operating its business and is now proceeding with its Chapter 11 liquidating Plan. The Debtor's headquarters are located at 5570 Enterprise Parkway in Fort Myers, Florida. The Debor subleases this space from Interface Collaborative Group, LLC, an affiliate of the Debtor, but will seek to reject its lease and enter into a sublease to complete its liquidation.

The Debtor was formed as a Texas limited liability company on or about November 6, 2017 as Island Roofing, LLC. On or about October 19, 2021, the Debtor changed its name to Island Roofing and Restoration, LLC as a Florida limited liability company. The Debtor also owns several fictious business names, i.e., Franks Roofing and Spraying, Island Roofing & Sheet Metal, and Island Services Roofing HVAC Electrical Plumbing.

B.    Background of the Debtor's Litigation

The Debtor filed this Chapter 11 case in order to attempt to reorganize its business and reduce continuing expenses primarily as a result of litigation costs and ongoing disputes. In addition, the Debtor experienced cash flow shortfalls associated with its residential business due to insurance carriers delaying payment on jobs due to Hurricane Ian in September, 2022. Unfortunately, the Debtor determined that continued operations was not possible and as a result the Debtor ceased operations. The Debtor is now proceeding to complete an orderly liquidation and seeks to maximize the return to creditors.

**Pending Litigation**

The Debtor is a defendant in several litigation matters pending in the Twentieth Judicial Circuit in and for Collier County, Florida as follows:

a.  *NRG2, LLC vs. Island Roofing and Restoration, LLC*, Case No. 21-CA-02751;

b.  *PMB Holdings, LLC vs. Island Roofing and Restoration, LLC*, Case No. 22-CA-01059;

c.  *Reliant Public Adjusters, LLC vs. Island Roofing and Restoration, LLC*, Case No. 22-CA-1581l;

d.  *Reliant Public Insurance Adjusters, LLC vs. Island Roofing and Restoration, LLC*, Case No. 22-CA-01583;

e.  *Thomas Caffrey vs. Island Roofing and Restoration, LLC*, Case No. 21-CA-02751.

The Debtor is also a plaintiff in a litigation matter pending in the United States District

Court for the Middle District of Florida titled *Island Roofing and Restoration, LLC vs. Empire Indemnity Insurance Company*, Case No. 2:21-cv-211-JLB-KCD ("Empire Litigation"). The litigation has been pending for several years and the Debtor is seeking in excess of 2 million dollars in damages. On November 9, 2023, the District Court entered the following Order:

> "Pursuant to Fed. R. Civ. P. 56(f), the Court hereby puts Defendant on notice that it may grant Plaintiff's request for an entry of judgment in its favor on the basis that Plaintiff has made a showing that the "amount actually spent that is necessary to repair or replace the lost or damaged property" exceeds the amount of money that Defendant has already paid. (Doc. [85] at 2, 14-15, 18-19). Defendant is therefore given until November 20, 2023, to respond to the Court's notice. Defendant's response should not exceed fifteen pages. Plaintiff may file a reply, not to exceed fifteen pages, on or before November 30, 2023. Defendant may file a sur-reply, not to exceed five pages, on or before December 7, 2023. No extensions to this briefing schedule will be granted absent extraordinary circumstances."

The Debtor will continue to complete the litigation and collection of the Empire Litigation. Any award for damages will be committed to the Debtor's liquidation effort.

The liquidating chapter 11 allows the Debtor to effectively complete its liquidation, sell its Assets, complete the Empire Litigation, resolve claims, and seek collection of amounts owed to the Debtor, such as retainages and amounts owed for work completed. The Debtor will likely utilize the assistance of the Subchapter V Trustee, Ruediger Mueller, to assist Debtor's collection efforts where needed. The Debtor will also utilize a skeleton crew to assemble, clean and present the Assets for sale pursuant to this Plan. As a result, payroll costs have been substantially reduced.

Although no final determination has been made by the Court, it appears that the Debtor's primary secured creditor is Libertas Funding, LLC ("Libertas") in connection with an agreement of sale of future receivables in the amount of approximately $1,158,928.50 as of the Petition

Date (the "Libertas Agreement"). Libertas filed a UCC financing statement asserting a security interest in, among other things, all inventory, equipment, accounts and accounts receivable.

SRS Distribution, Inc. d/b/a Suncoast Roofer's Supply ("SRS") purports to hold a second secured claim in the approximate amount of $1,219,972.99 as of the Petition Date in connection with lien rights relating to the majority of Debtor's current projects or jobs.

The Debtor estimates that, as of the Petition Date, the amount claimed by the general unsecured creditors was approximately $3,139,071.20, which includes various suppliers and related vendors.

C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A.

The Debtor has filed its Motion for Authority to Sell Certain Trucks and Vehicles Free and Clear of Encumbrances (Doc. No. 67) ("Vehicle Sale Motion"), its Motion for Authority to Obtain Post-Petition Financing (Non-Priming as to Libertas Funding, LLC, Suncoast Roofer's Supply and Any Surety with Subrogation Rights), to Grant Liens and Administrative Expense Status (Doc. No. 75) ("DIP Financing") and its Notice of Cessation of Business (Doc. No. 76). The liquidating Chapter 11 is preferable to a conversion to Chapter 7. The Debtor believes it can maximize the return to the estate given its knowledge of the roofing business, its contracts in the area, the preliminary interest it has received from certain strategic buyers, and the Debtor's knowledge concerning the overall business and litigation related cases. The Debtor is in the process of engaging Moecker Auctions to value the Assets and provide guidance to the Debtor in

connection with a liquidation sale.  In the interim, the Debtor will proceed with the sale of the vehicles pursuant to the Vehicle Sale Motion upon the Court's approval of same.

The Court has scheduled a hearing on the Debtor's Vehicle Sale Motion for February 28, 2024 at 10:30 A.M.  In connection with the Vehicle Sale Motion, the Debtor has compiled a list of the vehicles that it intends on selling as part of its liquidation Plan.  The Debtor anticipates being able to sell the vehicles in a range between $704,540.00 and $790,508.00.  The vehicles are all used as roofing vehicles and have low mileage.  As a roofing contractor, the Debtor is familiar with the market and is confident it will be able to procure purchasers that will offer at least the low end of the sale range.  Attached hereto as Exhibit "B" is the list of vehicles the Debtor intends to sell.

D.  <u>Ability to Make Future Plan Payments and Operate</u>.

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business[1].

The Plan Proponent has provided projected financial information as Exhibit "C".

The final Plan payment is expected to be paid on the 36th month from the Effective Date of the Plan which is anticipated to be made in calendar year 2027.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**ARTICLE 1**
**SUMMARY**

This Plan proposes to pay creditors from the liquidation of the Debtor's Assets.

---

[1] Debtor's business will consist of winding down its business and pursuing its litigation claims.  Debtor will utilize a skeleton crew to assemble, clean and present the Assets for sale pursuant to this Plan.  The Debtor has obtained Court authority to hire Anthony J. Tinelli, Esq. who will be pursuing the Empire Litigation claim described in the Debtor's Chapter 11 Case Summary and herein.

This Plan provides for six classes of secured claims; one class of non-priority unsecured claims; and one class of equity security holders.

Non-priority unsecured creditors holding Allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of all Allowed Administrative and Priority Claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**ARTICLE II**
**DEFINITIONS**

For the purposes of this Plan, the following terms and definitions shall have the following meanings unless the context clearly indicates otherwise:

2.1     <u>Administrative Expense</u> shall mean those expenses described in Section 503 of the Bankruptcy Code.

2.2     <u>Allowed Claim</u> shall mean a claim (a) for which a Proof of Claim has been filed with the Court on or before the Bar Date fixed by the Court or (b) which was scheduled and filed with the Court pursuant to Bankruptcy Rule 1007 and not listed as disputed, contingent or unliquidated as to amount.  In either case, Allowed Claim means a claim which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3003, or an order of the Court which is no longer subject to appeal of this Plan.

2.3   <u>Allowed Priority Claim</u> shall mean an Allowed Claim for which the holder asserts and is determined to be entitled to priority under Section 507, et seq., of the Code, in anamount allowed by Final Order of the Court upon a request pursuant to Section 503(a) of the Code.

2.4   <u>Allowed Secured Claim</u> shall mean an Allowed Claim arising on or before the petition date that is secured by a valid lien on property of the Debtor which is not void or voidable under any state or federal law including any provision of the Code and is supported by actual value in the Creditor's collateral consistent with Section 506 of the Code.

2.5   <u>Allowed Unsecured Claim</u> shall mean an Allowed Claim against the Debtor, which is not an Allowed Priority Claim, Allowed Secured Claim or claim of an Equity Interest Holder.

2.6   <u>Assets</u> shall mean all the assets of the estate such as vehicles, equipment, accounts receivable, retainage, and litigation or collection related claims.

2.7   <u>Bar Date</u> shall mean the final date for filing proofs of claim in this case as provided by the Notice of Bankruptcy Case (Doc. No. 19), which is January 31, 2024.

2.8   <u>Case</u> shall mean this Chapter 11 case, Subchapter V.

2.9   <u>Claim</u> shall have the meaning set forth in Section 101(5) of the Code.

2.10   <u>Code</u> shall mean the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, and thereafter amended.

2.11   <u>Confirmation</u> shall mean the date upon which the order is entered by the Court confirming the Plan.

2.12   <u>Court</u> shall mean the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over this case.

2.13    Creditor shall mean any person having an Allowed Unsecured, Secured or Priority Claim against the Debtor as defined in Section 101(10) of the Code.

2.14    Debtor shall mean Island Roofing and Restoration, LLC, the Debtor herein.

2.15    Effective Date shall mean The Effective Date of this Plan is the later of the first business day following the thirty (30) days after the entry of the order on confirmation of Plan.

2.16    Equity Interest Holder shall mean any member of the Debtor as of the Effective Date.

2.17    Insider shall have the meaning as set forth in Section 101(31) of the Code.

2.18    Lien shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation, and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101(37) of the Code.

2.19    Plan and Plan Term shall mean this Plan of Liquidation, including any modifications, attachments, exhibits, amendments or corrections hereto. The term of the Plan will be the earlier of three (3) years from the Effective Date or the date that is forty-five (45) days after the Debtor completes the (a) liquidation of all its Assets, (b) all claims have been resolved by the Court or by agreement of the parties and (c) distributions to allowed claims are made pursuant to the Plan.

2.20    Proponent shall mean the Debtor.

2.21    Secured Creditor shall mean the owner and holder of an Allowed Secured Claim.

2.22    Unsecured Creditor shall mean the holder and owner of an Allowed Unsecured Claim.

# ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims, as defined herein and at Section 101(5) of the Code, against the Debtor of whatever nature, whether or not scheduled or unliquidated, absolute or contingent, including all claims arising from the rejection of executory contracts, and all interests arising from the ownership of the Debtor, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

3.1     <u>Administrative Expenses</u>. Costs and expenses of administration as defined in the Code as provided in Section 507(a)(1) of the Code, applications for which are filed prior to any applicable bar date, as the same are allowed, approved and ordered paid by the Court. Administrative Expenses include the Allowed Claims of Debtor's counsel and all professionals retained by the Debtor as well as those of the Subchapter V Trustee and the Debtor's Special Counsel during this case for time expended through the completion of the liquidation of the Debtor and the filing of its final tax return.

3.2     <u>Priority Claims</u>.  Claims entitled to priority pursuant to Section 507(a) of the Code, as the same are allowed, approved, or ordered paid by the Court, excluding any claims that are separately classified. Claim Nos. 7 and 8 were filed by the Lee County Tax Collector, in the total amount of $8,586.36 and Claim No. 13 of the Internal Revenue Service in the amount of $36,601.13. All Allowed Priority Claims shall be paid in full upon the sale of the Debtor's Assets.

3.3     <u>Class 1</u>[2]: Class 1 consists of the Allowed Secured Claim of Libertas who filed Claim No. 24 based on an agreement of sale of Future Receivables in the amount of

---

[2] The Class 1 Claim has not been finally determined by the Court to be a valid, perfected, secured claim.  This determination shall be made prior to any distribution under this Plan, but no later than sixty (60) days after the Effective Date, unless otherwise extended by Order of the Court.  For purposes of this Plan, the Plan assumes that the secured claim shall be valid, enforceable and considered an Allowed Secured Claim.

$1,159,033.50.    Libertas filed a UCC-1 financing statement asserting a security interest in, among other things, cash, accounts and accounts receivable.

3.4    Class 2[3].  Class 2 consists of the Allowed Secured Claim of SRS in the amount of $598,573.05[4] in connection with lien rights relating to the Debtor's current projects or jobs.

3.5    Class 3.  Class 3 consists of the Allowed Secured Claim of Jason Martin and Joshua Martin is based on any DIP Financing, if any.  As of the filing of this Plan, no DIP Financing was necessary.

3.6    Class 4.  Class 4 consists of the Allowed Secured Claims of Ford Motor Credit Company, LLC ("Ford") who filed Claim No. 2 in the amount of $25,246.87 in connection with a 2020 Ford F150, VIN: 28361 and Claim No 3 in the amount of $24,278.17 in connection with a 2020 Ford F150, VIN: 08901.

3.7    Class 5.  Class 5 consists of the Allowed Secured Claims of Ally Bank c/o AIS Portfolio Services, LLC ("Ally") who filed Claim No. 4 in the amount of $44,248.68 in connection with a 2023 Chevrolet Silverado, VIN: 156205 and Claim No. 5 in the amount of $55,844.04 in connection with a 2020 Chevrolet Silverado, VIN: 222399.

3.8    Class 6.  Class 6 consists of the Allowed Secured Claim of Wells Fargo Bank who filed Claim No. 9 in the amount of $22,000.00 in connection with a Xtreme Variable Reach Forklift ("Forklift") and an unsecured deficiency claim in the amount of $27,670.58

3.9    Class 7. Class 7 consists of all non-priority unsecured claims allowed under § 502 of the Code.   The Debtor estimates that, as of the Petition Date, the amount claimed by the

---

[3] The Class 2 Claim has not been finally determined by the Court to be a valid, perfected, secured claim.  This determination shall be made prior to any distribution under this Plan, but no later than sixty (60) days after the Effective Date, unless otherwise extended by Order of the Court.  For purposes of this Plan, the Plan assumes that the secured claim shall be valid, enforceable and considered an Allowed Secured Claim.

[4] SRS did not file a proof of claim in this case. The Debtor scheduled the amount of $1,219,973.00 as the amount that was due to SRS on the date of filing.  Since the Petition Date, the Debtor has made payments to SRS and at the time of the filing of this Plan, the Debtor believes that the total amount owed to SRS is now $598,573.05.

general unsecured creditors was approximately $3,139,071.20, which includes various suppliers

and related vendors.  Debtor reserves the right to object to any scheduled or filed claim.

3.10    <u>Class 8</u>.  Class 8 consists of the Equity Interest Holders of the Debtor.

**ARTICLE IV**
**TREATMENT OF CLASSES IMPAIRED UNDER THE PLAN**

Pursuant to Section 1122 of the Bankruptcy Code, Claims and Interests shall be treated as

follows under the Plan:

| Class | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Allowed Secured Claim of Libertas | No | Impaired | Class 1 consists of the Allowed Secured Claim of Libertas (Claim No. 24) in the amount of $1,159,033.50.<br><br>The Class 1 Claim has not been finally determined by the Court to be a valid, perfected, secured claim.  This determination shall be made prior to any distribution under this Plan, but no later than sixty (60) days after the Effective Date, unless otherwise extended by Order of the Court.  For purposes of this Plan, the Plan assumes that the secured claim shall be valid, enforceable and considered an Allowed Secured Claim.<br><br>During the term of the Plan and until Libertas is paid in full, the Debtor shall pay Libertas $13,757.00 per month beginning on the Effective Date of the Plan and continuing each month thereafter until Libertas is paid in full from the net sale proceeds in connection with the liquidation of the Debtor's Assets.  The term of the Plan will be the earlier of three (3) years from the Effective Date or the date that is forty-five (45) days after the Debtor completes the (a) liquidation of all its Assets, (b) all claims have been resolved by the Court or by agreement of the parties and (c) distributions to allowed claims are made pursuant to the Plan. |

| 2 | Allowed Secured Claim of SRS | No | Impaired | Class 2 consists of the Allowed Secured Claim of SRS in the amount of $598,573.05.

SRS did not file a proof of claim in this case. The Debtor scheduled the amount of $1,219,973.00 as the amount that was due to SRS on the date of filing.  Since the Petition Date, the Debtor has made payments to SRS and at the time of the filing of this Plan, the Debtor believes that the total amount owed to SRS is now $598,573.05.

The Class 2 Claim has not been finally determined by the Court to be a valid, perfected, secured claim.  This determination shall be made prior to any distribution under this Plan, but no later than sixty (60) days after the Effective Date, unless otherwise extended by Order of the Court.  For purposes of this Plan, the Plan assumes that the secured claim shall be valid, enforceable and considered an Allowed Secured Claim.

Class 2 shall be paid consistent with its lien on certain projects.  The Debtor shall also pay SRS from the sale of the Assets during the term of the Plan. |
| 3 | Allowed Secured Claim of Jason Martin and Joshua Martin | No | Impaired | Class 3 consists of the Allowed Secured Claim of Jason Martin and Joshua Martin based on DIP Financing, if any.  As of the filing of this Plan, no DIP Financing was necessary.

In the event that DIP Financing is necessary, the claim of Class 3 shall be paid after payment of the claims of Classes 1 and 2. |
| 4 | Allowed Secured Claims of Ford Motor Credit | No | Impaired | Class 4 consists of the Allowed Secured Claims of Ford Motor Credit Company, LLC ("Ford") who filed Claim No. 2 in the amount of $25,246.87 in connection with a 2020 Ford F150, VIN: 28361 and Claim No 3 in the amount of $24,278.17 in connection with a 2020 Ford F150, VIN: 08901. |

| | | | | |
|---|---|---|---|---|
| | | | | Pursuant to the Debtor's Vehicle Sale Motion, the Debtor shall sell the two 2020 Ford F150, VIN: 28361 and 08901 ("Vehicles") and pay the claims of Class 4 in full from the sale proceeds. In the event that the sale proceeds are insufficient to pay the Class 4 Claims in full, any deficiency claims shall be treated as a general unsecured claim in Class 7. |
| 5 | Allowed Secured Claims of Ally Bank | No | Impaired | Class 5 consists of the Allowed Secured Claims of Ally Bank c/o AIS Portfolio Services, LLC ("Ally") who filed Claim No. 4 in the amount of $44,248.68 in connection with a 2023 Chevrolet Silverado, VIN: 156205 and Claim No. 5 in the amount of $55,844.04 in connection with a 2020 Chevrolet Silverado, VIN: 222399.<br><br>Pursuant to the Debtor's Vehicle Sale Motion, the Debtor shall sell the 2023 Silverado and the 2020 Silverado ("Vehicles") and pay the claims of Class 5 in full of the sale proceeds.  In the event that the sale proceeds are insufficient to pay the Class 5 Claims in full, any deficiency claims shall be treated as a general unsecured claim in Class 7. |
| 6 | Allowed Secured Claim of Wells Fargo | No | Impaired | Class 6 consists of the Allowed Secured Claim of Wells Fargo Bank who filed Claim No. 9 in the amount of $22,000.00 in connection with a Xtreme Variable Reach Forklift ("Forklift") and an unsecured deficiency claim in the amount of $27,670.58.<br><br>The Debtor shall sell the Forklift and shall pay the claim of Class 6 in full from the sale proceeds.  In the event that the sale proceeds are insufficient to pay the Class 6 claim in full, any deficiency claim will be treated as a general unsecured claim in Class 7. |
| 7 | Non-Priority Unsecured Claims | No | Impaired | Class 7 consists of all non-priority unsecured claims allowed under § 502 of the Code.  The Debtor estimates that, as of the Petition Date, the amount claimed by the general unsecured creditors was approximately $3,139,071.20, which includes various suppliers and related |

| | | | | vendors.  Debtor reserves the right to object to any scheduled or filed claim.<br><br>Each Holder of an allowed unsecured claim shall receive a pro-rata share of the net recovery from the liquidation of all Assets, after the Effective Date and after payment of all Allowed Secured Claims in Classes 1 through 5 are paid in full consistent with the Plan. |
| 8 | Equity Security Holders | No | Unimpaired | Class 8 consists of the Equity Interest Holders of the Debtor.<br><br>The equity interests will be retained by the Debtor's equity security holders upon confirmation. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1     <u>Disputed Claim.</u>    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.  The Debtor shall have sixty (60) days from the Effective Date to file any objection to claim or adversary proceeding with respect to any claim whether secured priority or unsecured.

5.2     <u>Delay of Distribution on a Disputed Claim.</u>  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. All proposed Plan payments to disputed claims shall be held in escrow by the Debtor's counsel until such disputed claim is allowed by a final non-appealable order. If a disputed claim is declared disallowed by agreement or by a final non-appealable order, the funds held in escrow shall revert to the Debtor.

5.3     <u>Settlement of Disputed Claims.</u> The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of theFederal Rules of Bankruptcy Procedures.

5.4      Debtor is not aware of any specific avoidance actions as of the filing of this Plan but reserves the right to file same if the Debtor becomes aware of such avoidance actions that may result in a positive recovery for creditors under the Plan.

**ARTICLE VI**
**<u>PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

6.01    <u>Executory Contracts and Unexpired Leases.</u>

(a)     As part of confirmation of this Plan, the Debtor will not seek to assume any executory contract or unexpired lease as of the confirmation of the Plan, except for a sublease for its nonresidential real property.

(b)     As of the Petition Date and as previously determined by the Court or as reflected on Schedule G, the Debtor will seek to reject any and all pending executory contracts or leases that existed as of the Petition Date, with the exception of the Debtor's sublease on its premises.

(c)     Unless otherwise stated in an order on rejection, a proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty (20) days after the date of the order confirming this Plan.

(d)     The Debtor shall continue to seek collection on all projects for work completed or retainages owed, notwithstanding the rejection of any contract.

**ARTICLE VII**
**MEANS FOR EXECUTION OF THE PLAN**

The Debtor shall fund its Plan through an orderly liquidation, including but not limited to, (a) sale of vehicles, inventory, and other tangible assets; (b) collection of accounts receivable; (c) collection of amounts owed on retainage for completed projects; (d) litigation related collections such as the Empire Litigation; and (e) and DIP loans, if necessary.

**ARTICLE VIII**
**RETENTION OF JURISDICTION**

8.01    Retention of Jurisdiction.   The Bankruptcy Court will retain jurisdiction as provided for by the Bankruptcy Code and other applicable law.   The Bankruptcy Court will retain jurisdiction to determine all issues related to the Debtor's Plan, assumption of executory contracts, objections to claims, settlements approved by the Bankruptcy Court, including the enforcement of any Plan default.

8.02    Retention of Jurisdiction for Specific Purposes. In addition to the general retention of jurisdiction set forth in Article 8.01, after Confirmation of the Plan and until this Chapter 11 Case is closed, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case for the following specific purposes:

(a) to resolve any disputes concerning any exculpation of, or limitation of liability as to, a non-debtor (including any Professional (as defined in § 327 of the Code)) hereunder or the injunction against acts, employment of process or actions against such non debtor (including any Professional) arising hereunder.

**ARTICLE IX**
**NO TAXES UNDER 11 U.S.C. § 1146(a)**

The Debtor's Plan contemplates the sale of its assets and the possible use of DIP Financing. The proposed sales are in furtherance of a plan of reorganization and "under a plan".

Accordingly, to the extent required by a purchaser or as otherwise necessary, the Debtor requests an express finding that the proposed sale is *exempt from "stamp or similar" taxes pursuant to Section 1146(a) of the Bankruptcy Code.*

## ARTICLE X
## MISCELLANEOUS

10.1    <u>Amendments or Modifications</u>.  The Debtor as the Plan Proponent may propose amendments or modifications of this Plan any time prior to the Confirmation with leave of the Court upon notice to appropriate parties. After Confirmation of the Plan, the Debtor may, with approval of the Court, and so long as it does not materially or adversely affect the interests of the Creditors or Equity Interest Holders, amend the Plan to remedy any defect or omission or to reconsider any inconsistencies in the Plan or in the order of Confirmation in such manner as may be necessary to carry out the purposes and effect of the Plan. Any such modification must be consistent with Section 1193 of the Bankruptcy Code.

10.2    <u>Responsibilities for Plan Payments.</u> The Debtor will be the Disbursing Agent and it shall be responsible for making the Plan payments directly to the holders of Allowed Claimants. The Debtor shall be making all the Plan payments and not the Subchapter V Trustee whether the Plan is confirmed under 11 U.S.C. § 1191(a) or (b).

10.3    <u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10.4    <u>Binding Effect.</u> The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns ofsuch entity.

10.5    Captions.    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

10.6    Controlling Effect.    Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Florida govern this Plan and any agreements, documents and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

10.7    Corporate Governance.    Under Bankruptcy Code sections 1123(a)(6) and 1123(a)(7), a bankruptcy court is required to scrutinize any reorganization plan which alters voting rights or establishes management in connection with a plan of reorganization, whether or not plan provides for issuance of new securities. A bankruptcy court considers shareholders' interest in participating in Debtor Corporation, desire to preserve debtor's reorganization, and overall fairness of provisions.  This Plan does not intend to change the structure of its corporate governance to include different classes of shares or non-voting shares and to the extent applicable, the Debtor shall amend its by-laws to prohibit the issuance of nonvoting shares.

## ARTICLE XI
## RELEASE AND DISCHARGE

11.01    Consensual Plan.    If the Plan is confirmed under § 1191(a), on the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

11.02    Non-consensual Plan.    If the Plan is confirmed under § 1191(b), the Debtor shall

receive its discharge once all payments due under Plan have been made, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

11.03  <u>Release and Injunction (Debtor)</u>.  The Debtor's Plan contemplates a full and absolute release for the Debtor. The release and injunction provisions herein will apply specifically to the Debtor on the broadest possible basis as to all Claimants. On the Effective Date, the Debtor shall obtain a full and complete release of any and all claims asserted against the Debtor.

11.04  <u>Discharge and Release by Holders of Claims and Interests</u>. Except for the obligations expressly imposed by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment and termination of all such Claims against, liabilities of, liens on, obligations of and interests in Debtor.


[REAMINDER OF PAGE LEFT INTENTIONALLY BLANK]

## ARTICLE XII
## NO LIABILITY FOR TAX CLAIMS

Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be allowed against the Debtor or the Reorganized Debtor or their respective members, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its affiliates, or any other person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

Dated: February 20, 2024.          Respectfully submitted,

ISLAND ROOFING AND RESTORATION, LLC

By: _____
    Jason Martin, Manager

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PLAN OF LIQUIDATION has been furnished electronically by the Court's CM/ECF system to all CM/ECF Participates on this 20th day of February, 2024.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Alberto ("Al") F. Gomez, Jr.
Alberto ("Al") F. Gomez, Jr. (FBN: 784486)
400 North Ashley Drive, Ste. 3100
Tampa, FL 33602
Telephone:    813-225-2500
Facsimile:     813-223-7118
Email: Al@jpfirm.com
Attorneys for Debtor

**Island Roofing & Restoration, LLC**
**Exhibit A Liquidation Analysis**

| ASSETS | | Chapter 7 Liquidation | | Chapter 11 Liquidation/Sale* |
|---|---|---|---|---|
| Cash in Banks | $ | 126,379.30 | $ | 126,379.30 |
| prepaid expenses | $ | 20,230.84 | $ | 20,230.84 |
| Outstanding Receivables | $ | 860,869.61 | $ | 1,434,782.68 |
| Unreleased retainage | $ | 495,557.87 | $ | 825,929.79 |
| Inventory | $ | 49,200.00 | $ | 82,000.00 |
| Office Furniture and Equipment | $ | 12,600.00 | $ | 21,000.00 |
| unencumbered vehicles | $ | 422,724.00 | $ | 704,540.00 |
| Ford vehicles encumbered by Ford Motor's liens | $ | 31,632.08 | $ | 52,720.14 |
| Chevrolet vehicles encumbered by Ally Financial's liens | $ | 62,381.21 | $ | 103,968.68 |
| Xtreme Variable Reach Forklift | $ | 29,271.00 | $ | 48,785.00 |
| Machinery & Equipment | $ | 297,079.79 | $ | 495,132.99 |
| Note Receivable owed by an employee | $ | 10,800.00 | $ | 18,000.00 |
| Claim against Empire Indemnity Insurance Co | $ | 2,200,000.00 | $ | 4,400,000.00 |
| **Total Assets** | **$** | **4,618,725.71** | **$** | **8,333,469.42** |
| | | | | |
| **Liabilities** | | | | |
| Chapter 11 Administrative Expense Claims** | $ | 280,000.00 | $ | 280,000.00 |
| Chapter 7 Administrative Fees | $ | 15,000.00 | $ | - |
| Secured Claims | $ | 1,956,894.89 | $ | 1,956,894.89 |
| **Total Liabilities** | **$** | **2,251,894.89** | **$** | **2,236,894.89** |
| | | | | |
| **TOTAL AVAIL TO ALLOWED UNSECURED CLAIMS** | **$** | **2,366,830.82** | **$** | **6,096,574.53** |

*Sale proceeds and recovery from the Empire Litigation
should satisfy all creditors.  Even without Empire
Litigation recovery, the sale proceeds are more than what
creditor's would receive in a Chapter 7.

**Includes fees for professional services of Debtor's
counsel, the Subchapter V Trustee and a 5% contingency
fee to Debtor's special counsel in connection with the
claim against Empire Indemnity Insurance Co.

# Exhibit "A"

| Tag Number | Type of Vehicle | VIN Number | Mileage | KBB low trade | KBB high trade |
|---|---|---|---|---|---|
| PCY-Y16 | 2020 Ford F-150 Plat | 1FTEW1E42LFB28361 | 69,481 | Ford Motor note | |
| PJC-G92 | 2020 Ford F-150 Plat | 1FTEW1E40LFA08901 | 89,000 | Ford Motor note | |
| AT2 1BH | 2020 Chevy Silverado 2 WD | 1HTKHPVK7LH222399 | 10,962 | Ally Financial note | |
| AT2 0BH | 2023 Chevy Summitt 4WD | 1GB4YSE77PF156205 | 12,272 | Ally Financial note | |
| LYI-K64 | 2019 Ford F-250 4 Dr | 1FD7W2A66KED56627 | 100,621 | $ 18,106.00 | $ 21,747.00 |
| NEZ-G73 | 2019 Ford F-250 4 Dr | 1FD7W2A6XKED56629 | 55,501 | $ 25,546.00 | $ 28,187.00 |
| LSIB81 | 2018 Ford Transit Van | 1FDBW5PM8JKB06890 | 59,191 | $ 24,090.00 | $ 27,627.00 |
| LYI-E32 | 2019 Ford Transit Van | 1FDBW5PM1KKA19429 | 88,151 | $ 20,000.00 | $ 25,000.00 |
| LVV-S62 | 2019 Ford Transit Van | 1FDBW5PM8KKA19430 | 80,648 | $ 20,000.00 | $ 25,000.00 |
| LVW-H83 | 2019 Ford F-250 4 Door Service Body | 1FD7W2A66KED43926 | 88,610 | $ 19,842.00 | $ 23,483.00 |
| NPX-J97 | 2019 Ford F-250 4 Door Service Body | 1FD7W2A66KEF85258 | 56,367 | $ 24,404.00 | $ 28,045.00 |
| NPW-J96 | 2019 Ford F-550 Super Duty | 1FD0W5HT4KEG79766 | 59,738 | $ 50,000.00 | $ 53,000.00 |
| PIB-M93 | 2020 Ford Super Duty | 1FD7W2A6XLED42697 | 43,877 | $ 30,127.00 | $ 33,874.00 |
| QKH-T90 | 2019 Chevy Silverado 2WD 5500 | 1HTKHPVK9KH295949 | 75,400 | $ 38,000.00 | $ 40,000.00 |
| QKH-S14 | 2021 Chevy Silverado 3500 4Dr | 1GB3YSEY1MF195145 | 55,185 | $ 38,000.00 | $ 40,000.00 |
| QTI-P78 | 2020 Chevy Silverado 4Dr Crew Cab | 1GB4WLE71LF306315 | 55,009 | $ 26,837.00 | $ 30,302.00 |
| QTI-P77 | 2121 Chevy Silverado 2WD 4Dr Crew Cab | 1GB1WLE7XMF170285 | 46,020 | $ 31,068.00 | $ 34,573.00 |
| QTI-G52 | 2021 Chevy Silverado 2500 4WD Crew Cab | 1GC1YPEY7MF253940 | 48,892 | $ 48,648.00 | $ 53,955.00 |
| QTI-N18 | 2021 Chevy Silverado 2 WD Crew Cab | 3GCPWAEK4MG318606 | 80,123 | $ 17,290.00 | $ 19,631.00 |
| QTI-N19 | 2021 Chevy Silverado 2 WD Crew Cab | 3GCPWAEKIMG314593 | 60,931 | $ 19,224.00 | $ 21,565.00 |
| QJZ-Q58 | 2021 Chevy Silverado 2500 4WD Crew Cab | 1GC4YPEY0MF265926 | 98,455 | $ 42,225.00 | $ 47,532.00 |
| 30A-DIB | 2021 Chevy Silverado | 1GCPWCED2MZ376386 | 47,439 | $ 27,780.00 | $ 30,773.00 |
| 54ALIQ | 2022 Chevy Silverado 1500 | 1GCRWBEK6NZ118634 | 39,358 | $ 22,822.00 | $ 25,255.00 |
| P0081F | 2008 International | IHTWGAZT78J646427 | 35,512 | $ 22,000.00 | $ 25,000.00 |
| BL26WT | 2023 Chevy Silverado1500 2WD Crew Cab | 3GCPAAEKXPG201860 | 13,598 | $ 32,978.00 | $ 35,658.00 |
| 57BIKJ | 2014 Ford 550 | 1FDUF5GY0EEB30052 | 101,727 | $ 20,000.00 | $ 23,000.00 |
| 55BIKJ | 2014 Ford Ranger | 1FTER1EH6KLB12352 | 54,905 | $ 20,487.00 | $ 22,662.00 |
| 54BIKJ | 2020 Dodge Ram 2500 | 3C6UR5HL1LG206163 | 103,354 | $ 27,066.00 | $ 30,639.00 |
| 46BIKJ | 2014 Isuzu NPR HD | 54DC4J1B1ES805004 | 55,581 | $ 23,000.00 | $ 25,000.00 |
| 58BIKJ | 2017 Isuzu NPR | 54DB4J1B8HS807297 | 70,895 | $ 25,000.00 | $ 27,000.00 |
| | | | | $ 704,540.00 | $ 790,508.00 |

Exhibit "B"

CASH FLOW 3 YEAR PROJECTION

| REVENUE | | | | | |
|---|---|---|---|---|---|
| | | | Year 1 | Year 2 | Year 3 |
| 1 | | Total Cash Flow In | $350,000.00 | $0.00 | $0.00 |
| | | | | | |
| COGS | | | | | |
| | | SUB-CONTRACTORS | $0.00 | $0.00 | $0.00 |
| 2 | | SUPPLIES & MATERIAL | $0.00 | $0.00 | $0.00 |
| | | PURCHASE PRICE VARIANCE | $0.00 | $0.00 | $0.00 |
| | | INV ADJUSTMENTS | $0.00 | $0.00 | $0.00 |
| | | FRT, LOADING & DELIVERY | $0.00 | $0.00 | $0.00 |
| | | DIRECT LABOR COSTS | $0.00 | $0.00 | $0.00 |
| | | DIRECT LABOR - SUPVR | $0.00 | $0.00 | $0.00 |
| | | SALES TAXES | $0.00 | $0.00 | $0.00 |
| | | PERMIT & INSP FEES | $1,000.00 | $0.00 | $0.00 |
| | | ENG & DRONE SER | $0.00 | $0.00 | $0.00 |
| 3 | | EQUIP RENTAL | $0.00 | $0.00 | $0.00 |
| | | SM EQUIP & TOOLS EXP | $0.00 | $0.00 | $0.00 |
| | | WASTE & DUMPSTER | $0.00 | $0.00 | $0.00 |
| | | DAMAGES EXP | $0.00 | $0.00 | $0.00 |
| | | COGS - OTHER | $0.00 | $0.00 | $0.00 |
| | | USE TAX EXPENSE | $0.00 | $0.00 | $0.00 |
| | | | | | |
| Total COGS | | | $1,000.00 | $0.00 | $0.00 |
| | | | | | |
| | | | | | |
| Gross Profit | | | $349,000.00 | $0.00 | $0.00 |
| | | | | | |
| OPERATING EXPENSES | | | | | |
| 4 | | Salaries | $76,875.00 | $7,500.00 | $7,500.00 |
| | | Bank Expenses | $500.00 | $0.00 | $0.00 |
| | | Advertising | $0.00 | $0.00 | $0.00 |
| | | Travel | $0.00 | $0.00 | $0.00 |
| | | Insurance | $12,200.00 | $0.00 | $0.00 |
| | | Licenses | $0.00 | $0.00 | $0.00 |
| | | Office Rent | $57,887.18 | $0.00 | $0.00 |
| | | Property taxes | $42,450.00 | $0.00 | $0.00 |
| | | Office Supplies | $0.00 | $0.00 | $0.00 |
| | | Software, Subscriptions, & Dues | $52,800.00 | $0.00 | $0.00 |
| | | Utilities | $4,000.00 | $0.00 | $0.00 |

Exhibit "C"

| | | | | |
|---|---|---|---|---|
| | Fuel & Tolls | $8,500.00 | $0.00 | $0.00 |
| | Maintenance & Repairs | $29,200.00 | $0.00 | $0.00 |
| | Other Expenses | $10,000.00 | $0.00 | $0.00 |
| | | | | |
| **Total Operating Expenses** | | $294,412.18 | $7,500.00 | $7,500.00 |
| | | | | |
| 5 | Class 1 - Libertas | $165,084.00 | $165,084.00 | $165,084.00 |
| 1 | Class 2 - SRS | $0.00 | $0.00 | $0.00 |
| 1 | Class 3 - Jason & Joshua Martin | $0.00 | $0.00 | $0.00 |
| 1 | Class 4 - Ford Motor Credit | $0.00 | $0.00 | $0.00 |
| 1 | Class 5 - Ally Bank | $0.00 | $0.00 | $0.00 |
| 1 | Class 6 - Wells Fargo Bank | $0.00 | $0.00 | $0.00 |
| 1 | Class 7 - Unsecured Creditors | $0.00 | $0.00 | $0.00 |
| | Total Plan Payments | $165,084.00 | $165,084.00 | $165,084.00 |
| | | | | |
| 1 | Net Cash Flow | -$110,496.18 | -$172,584.00 | -$172,584.00 |

1       Amounts to be paid from the sale of assets pursuant to a confirmed plan.
2       Implementing Centralized Purchasing to eliminate waste, and improve cash flow
3       Reduce Equipment Rentals
4       Cut Staff
5       Agreed upon monthly payment of $13,757.00 pursuant to the Cash Collateral budget.